(Decided 10th March, 1886.)

THE PRESIDENT, MANAGERS AND COMPANY OF THE BALTIMORE AND FREDERICKTOWN TURNPIKE ROAD *vs.* HENRY ROUTZAHN.

*Turnpike—Toll.*

The Baltimore and Fredericktown Turnpike Road, under its charter, (Act of 1804, ch. 51,) is entitled to charge and collect toll for ten miles, from a person passing through the ninth gate on its road westward from Baltimore City—toll for the three miles east and the seven miles west of the gate—whether he actually starts from Frederick and stops at Middletown, which is only five miles west of the gate, or not; and a person going east must pay for the same ten miles, and not simply for the six miles between gates numbers nine and eight.

APPEAL from the Circuit Court for Frederick County.

This was a suit by the appellant to recover tolls for the use of its road by the appellee. The particular gate, being No. 9, was on that part of the road which lies between Frederick and Middletown. The appellee was a mail-carrier between these places, using the road daily, and the arrangement was for the gate-keeper to charge the tolls and collect them at the end of each month. He failed, however, to pay any tolls from the 1st of March, 1881, to the 15th of February, 1882, when this action was in-

stituted to recover them. At the trial of this case after the remand, it was submitted to the Court, sitting as a jury, and it was agreed that the Court should overrule the plaintiff's prayers and render a verdict and enter up a judgment for the plaintiff for $100.69, and that this was done merely *pro forma,* and to enable the question involved to be at once presented to the Court of Appeals for final adjudication. The Court (RITCHIE, C. J., and LYNCH, A. J.,) thereupon rendered a verdict for the plaintiff for $100.69, and judgment was entered accordingly.

*Exception.*—The plaintiff asked the Court to rule as matter of law, upon the pleadings and evidence as follows:

1. That if the Court, sitting as a jury, shall believe from the evidence that defendant used the road of plaintiff, between Frederick and Middletown, and between Middletown and Frederick, the number of times, and with the single and double teams, as charged in the plaintiff's account, filed in this cause, that then the plaintiff has the right to recover in this suit for each trip through said gate with one horse and wagon one way, 12½ cents; for each trip one way with two horses and wagon, 25 cents; for each round trip with one horse and wagon, 25 cents; and for each round trip with two horses and wagon, 50 cents for the trips made, if the Court, as a jury, shall find the same up to the day of the bringing of this suit, the 15th of February, 1882.

2. That if the Court, as a jury, shall find the facts as set out in the first prayer, and shall also find that on each trip the defendant passed through plaintiff's gate No. 9, and passed on to Middletown, and from Middletown through said gate to Frederick, that then plaintiff had the right to receive from defendant for each trip one whole toll for each passage through said gate, notwithstanding the fact that the distance actually travelled was but eight miles, and not ten miles at each trip, and though the gate next west of said gate No. 9, is nine miles distant from said gate, and the next gate east of said gate No. 9, is six miles east of same.

The Court according to the agreement rejected the plaintiff's prayers, and this appeal was taken.

The cause was argued before ALVEY, C. J., STONE, MILLER, and BRYAN, J., for the appellant, and submitted on brief for the appellee.

*Wm. P. Maulsby, Jr.,* for the appellant.

*E. Y. Goldsborough,* and *James McSherry,* for the appellee.

MILLER, J., delivered the opinion of the Court.

This appeal is from a *pro forma* ruling and judgment rendered in the new trial awarded by this Court upon the reversal of the judgment in the case reported in 61 *Md.,* 37.

The question presented is, what amount of toll is the Turnpike Company entitled to charge and collect at the ninth gate on its road, counting from Baltimore City westward? A plat of the road was offered in evidence, which it was agreed truly represented the gates as now located from Baltimore westward to the tenth gate, and the amount of tolls charged and collected at each. It is easier to understand this plat by looking at it, than to describe it in words. The gates are not in all instances exactly five or ten miles apart, but the tolls appear to be regulated with reference to these distances. By section 34, of its charter, (Act of 1804, ch. 51,) the company was not allowed to erect any toll gate within one mile of the towns or villages mentioned in the Act. The first gate was therefore placed two miles west of the city limits. This gate collects tolls for the two miles east to the city limits, and for three miles west of its location; thus collecting for five miles, and making it what is called a half-toll gate. In the same way the second collects tolls for

four miles east and one mile west. The third collects for one mile east and nine miles west, thus collecting for ten miles, and making a full toll gate. The fourth again collects for two miles east and three miles west, and the fifth and sixth do the same. The eighth collects for seven miles east and three miles west, and the ninth for three miles east and seven miles west, so that these two are also full toll gates. The tenth collects for two miles east and three miles west, and is another half toll gate.

Under this arrangement persons travelling in vehicles on this road continuously from Baltimore to the tenth gate, or from that gate to Baltimore, use the entire road between those points and pay only the toll which the 20th section of their charter allows the company to charge. They, of course, have no cause or ground to complain of such an arrangement. But persons coming upon the road at other points, and who have, in using it only for a comparatively short distance, to pass one or more of these gates, complain that under this arrangement they are required to pay more proportionately than those who use it for the whole distance, and there is certainly an appearance of unfairness and injustice in such cases. But this question, though it has not been directly presented to this Court except in the former appeal in this case, has been more than once decided by the Court of Baltimore County, in reference to roads chartered under the same Act, and where the same sections of the law were construed, and in such decisions the reasons for sustaining the charges made by the companies are fully and forcibly stated. Thus as early as 1811 Judge NICHOLSON of that Court delivered an opinion in an appeal from a magistrate's judgment where the question was whether persons using the Falls Turnpike are chargeable only with tolls in proportion to the distance which they have travelled on it; or whether, having used the road only for three miles, they are chargeable for a full toll as if they had travelled the whole extent

of the five miles to which the road had then been completed. The company contended for the last position and the learned Judge said: "It is certain that if the former is adopted it will be productive of very great inconvenience, not only to the company but to travellers, who would have endless disputes with the gate-keepers in apportioning the tolls. The toll-gatherer can seldom know to what extent the road has been or may be intended to be used, and, of course, must be subjected to constant imposition. If the traveller could always carry a witness with him to give evidence as to the place where he begins to use the road, yet this would not avail unless the fractional part of every mile were ascertained and marked with a precision that would be almost impracticable. But even if these preliminaries were settled, other inconveniences, very little inferior in their nature, would present themselves, for the toll-gatherer must be a mathematician of no ordinary accuracy to enable him to do impartial justice, and the greater part of his time would be devoted to calculations. The Legislature could not have intended so palpable an absurdity. The absolute impracticability of carrying the law into effect under the construction contended for by the appellee (the traveller) will appear from a statement of the account which has been made in this case." That statement is then given and the Judge adds: "If a similar calculation was to be made according to the distance that every traveller uses the road, including the fractional part of every mile, the toll-gatherer must necessarily be engaged constantly in calculating for every individual, and this too without any satisfactory evidence to furnish the data of the calculation."

Again, in a very recent case, Judge WATTERS of the same Court delivered an opinion which was approved by Judge GRASON, who was then the Chief Judge of that Circuit and a member of this Court, in which the several sections of this Act, relating to this question, are more fully

considered and explained thus: "In section 19 the Act provides for the viewing, examination and licensing of the road in sections of ten miles each, as the same may be completed; and in section 36 it provides for the fractional part of ten miles which may remain over when it is completed. In section 20 it adopts these sections or spaces of ten miles as the unit of measure in fixing the rates of toll which the company should be allowed to charge ; but when it comes to provide the means by which the company may collect its tolls it authorizes the company in section 19 'to erect and fix such and so many gates or turnpikes upon and across said road as will be necessary and sufficient to collect the tolls and duties hereinafter granted to the said company.' In other words it does not restrict the company in the erection of gates for the collection of its tolls by sections or spaces of exactly the same length as that adopted as the unit of measure in fixing the rates, but authorizes it to divide the road as may be most convenient; and then says when so divided, for each section or space of ten miles so much, and for each greater or lesser space in the same proportion. A turnpike road is not like a bridge where a person using it must necessarily go in at one end and come out at the other, but the traveller goes on and off as he pleases. It is not like a railroad where the train stops at one station to take up a passenger and at another to let him off, and where the conductor can readily charge the exact fare for the distance travelled. It is in itself anomalous, and it is not surprising that even the best means which can be provided for collecting its tolls should appear anomalous and in some respects unfair to prevent other and greater unfairness. At all events the company has no power to collect its tolls except by the means provided in its charter. It can divide its road into sections or spaces of such length as may best suit its convenience, and erect gates or turnpikes, each of which, though occupying only a few feet, represents the *whole*

*section or space for which it was erected to take tolls;* and then if any person refuses to pay for passing over the *space which the gate represents,* the gate may be shut and the person stopped; but if he refuses to pay, the gate-keeper has no authority to prevent him from turning back and passing again over the same road he came, and no power to compel him to pay for the portion of the road which he has used. All the inequity of the established construction of the section of the Act in question is far more than counterbalanced by the unfairness and inconveniences of the opposite construction, so that in no respect can we see any good reason for reversing the former decision of this Court."

The views expressed in these opinions commend themselves to our judgments and we approve them. They seem clearly to sanction the system of collection explained in the plat before us, and in adopting it the company has, in our opinion, acted within the powers and privileges granted by its charter. According to this arrangement a person passing through gate No. 9 from the east must pay, if demanded, toll for the three miles east and the seven miles west of that gate, whether he actually starts from Frederick and stops at Middletown, which is only five miles west of the gate, or not. So a person going east must pay for the same ten miles and not simply for the six miles between gates Nos. 9 and 8. Our decision upon this question is of course based upon the truthfulness of the plat and the *bona fide* adoption by the company of the system which it represents. The two prayers offered by the appellant are in accord with the views we have thus expressed or sanctioned, and should have been granted.

When the case was before the Court on the former appeal, this plat was not used, nor was this system of collection explained to us. The question then arose upon the admissibility of evidence showing how far the appellee

had actually travelled upon the road, and was in fact a very subordinate one on that appeal.   Counsel for the company, as against the position taken by the appellee that he was only chargeable with tolls for the distance actually travelled, then contended, (we quote from their brief) " that he must pay according to the distance *between the gates*, no matter how much of the road he has used.". We then adopted that construction as against the contention of the appellee, and cited authorities to sustain it. But there is nothing in what we then said or in the authorities referred to that prevents us from deciding as we now do, upon the new state of facts now presented.

*Judgment reversed, and*
*new trial awarded.*

(Decided 10th March, 1886.)

The following plat which was offered in evidence, and which it was agreed truly represented the gates as now located on the road from Baltimore westward to the tenth gate, will very greatly facilitate the understanding of the case :

10th Gate, 57 mile stone.

3 M.

2 M.

Miles.

Middletown.

9 Miles.

9th Gate, 48 mile stone.

7 Miles.

GRUMBINES.

3 M.

Miles.

Frederick City.

6

8th Gate, 42 mile stone.

3 M.

7 Miles.

10 Miles.

6th Gate, 32 mile stone.

3 M.

2 M.

5 Miles.

5th Gate, 27 mile stone.

3 M.

2 M.

3 Miles.

4th Gate, 22 mile stone.

3 M.

2 M.

11 Miles.

9 Miles.

3rd Gate, 11 mile stone.

1 M.

2nd Gate, 9 mile stone.

1 M.

2 Miles.

1 M.

4 M.

9 Miles.

1st Gate, 2 mile stone.

3 M.

2 M.

2 M.

Baltimore City.

W

S

N

E

EXPLANATION.

Gate No. 1 collects 2 miles East and 3 miles West.

" " 2 " 4 " " " 1 " "

" " 3 " 2 " " " 9 " "

" " 4 " 2 " " " 3 " "

" " 5 " 2 " " " 3 " "

" " 6 " 2 " " " 3 " "

" " 7 " 7 " " " 8 " "

" " 8 " 3 " " " 7 " "

" " 9 " 3 " " " 3 " "

" " 10 " 2 " " " "